CULPEPPER, Judge.
This is 'an action for breach of contract. Plaintiff sues to recover the contract price of $6,384 paid for asphalt paving work performed by defendant. The petition alleges the material and workmanship furnished by defendant were defective, causing cracks and holes to form in the asphalt parking lot. From a judgment in favor of plaintiff, defendant appeals.
The sole issue presented by the parties on appeal is whether plaintiff is entitled to recover the price paid defendant under the contract.
Plaintiff owns a shopping center near Many, Louisiana on Louisiana Highway 6. After construction of a new Danbi’s Pizza Restaurant in the shopping center, plaintiff contacted defendant to pour an asphalt driveway and parking lot in the contiguous area. Defendant, a licensed asphalt contractor, had done similar work for plaintiff on previous occasions.
The agreement between the parties was entirely oral. No prior specifications as to the type, thickness or amount of asphalt needed were made, nor was any agreement reached concerning the contract price until after the work was completed and the sum of $6,384 paid.
Prior to the laying of the asphalt, plaintiff employed another person to grade and level the area to be paved. Before defendant started laying asphalt, he spread some loads of iron ore around the base area, although the exact amount and location was never clearly established. While defendant was laying the asphalt, it began to rain. The base became muddy, causing their equipment to bog down and more grading was necessary to relevel the area. Defendant testified that at this point he became aware that the soil in the base lacked sufficient iron ore and would not support the asphalt.
From this point there is a conflict in the testimony. Defendant testified he told plaintiff the asphalt would not hold, but that plaintiff instructed defendant to con *4 tinue to lay the asphalt, and they would patch any holes later. Defendant testified as follows:
“Q. When you laid the asphalt for Mr. Scaife, did you expect it' to hold?
“A. No, sir.
“Q. And why not?
“A. Just the soil conditions.
“Q. Did you tell Mr. Scaife that?
“A. Yes, on several occasions.
“Q. More than once?
“A. Yes sir.
“Q. What did you tell Mr. Scaife?
“A. Well, just in general terms, more or less complaining about it and I said ‘it is not going to hold up’, and he said ‘don’t worry about it, we will come back and patch it later’.
“Q. Are you certain that he said ‘don’t worry about it’ ?
“A. I am certain of that.
* * * * * *
“Q. If you were of the opinion that the asphalt would not hold up, why did you keep on doing the job and laying the hot mix?
“A. Well, he was under pressure and he led me to believe that there would be no hard feelings if it did fall in. He just said that he had to get Danbi’s open for business. It was my impression that the contract was almost up or that he had a deadline on it.”
Plaintiff admits that he wanted the job completed as quickly as possible, but he denies that defendant informed him that the asphalt would not hold, nor does he recall ever discussing with defendant the condition of the base.
Plaintiff testified that he began having problems with the asphalt soon after defendant had completed the job. There was much rain during this time of the year and cracks and holes soon began appearing in the asphalt. Plaintiff eventually contacted defendant to see if patching could alleviate the problem. Defendant admits that when he saw the lot it was in “bad shape”, and that the only way to guarantee the job would be to redo it completely.
Appellant’s defense rests primarily on the doctrine of equitable estoppel. Although aware that the asphalt would not hold, appellant claims he relied to his detriment on plaintiff’s assurances that the base was hard and had iron ore on it and that it was agreeable to plaintiff that the lot could be patched if it became necessary.
One of the fundamental elements of equitable estoppel is that the person against whom it is urged is aware of the facts relied upon. United Gas Pipeline Company v. Bellard, 286 So.2d 109 (La.App. 3rd Cir. 1973). Our review of the record convinces us that plaintiff was not familiar with the technical aspects of laying asphalt. Plaintiff himself testified that he knew nothing about asphalt, whereas defendant was very experienced in this area. We quote from the trial court’s well reasoned opinion with which we are in full accord:
“It is obvious to this Court that Mr. Scaife was unaware of the extent of the problem. Mr. Lightfoot, on the other hand, had considerable expertise in this specialized field of paving with asphalt. He was licensed by the State of Louisiana, following a written examination, to perform this type of construction work. He had, by his own testimony, during the four years he has engaged in this work, worked for some 170 different customers, and used 10,000 tons of asphalt (hot-mix) in this type of construction.
“He knew he was doing defective work. “At the most Mr. Scaife expected to have to fill up some pot holes at some later date.
“Mr. Lightfoot proceeded to perform this doomed undertaking, for which he was paid $6,384.
“He has suggested rather strongly that Mr. Scaife knew what the outcome would be but simply did not care.
“There is nothing in the evidence to indicate that Mr. Scaife incurred this expense frivolously, and that he did not care whether the work held up or not. Com *5 mon sense and exercise of common prudence would dictate to the contrary.”
The issues are factual and depend largely on the credibility of the parties. The trial judge was not clearly wrong in his findings of fact.
For the reasons assigned, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.